# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evangeline Hoffman-Lorah,       :
           Petitioner       :
      :
          v.       :
      :
Pennsylvania Public Utility       :
Commission,       :    No. 712 C.D. 2019
          Respondent       :    Submitted: March 3, 2023


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: June 23, 2023


Evangeline Hoffman-Lorah (Petitioner), pro se, petitions this Court for review of the Pennsylvania Public Utility Commission's (Commission) May 23, 2019 opinion and order (Opinion and Order) dismissing her complaint against PPL Electric Utilities Corporation (PPL) (Complaint) for failure to prove that PPL's smart meter installations constitute unsafe or unreasonable service under Section 1501 of the Public Utility Code (Code), 66 Pa.C.S. § 1501.[1]  Petitioner presents seven issues for this Court's review: (1) whether the Commission erred by holding

---

[1] Section 1501 of the Code states, in relevant part:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public.

66 Pa.C.S. § 1501.

that Petitioner was not entitled to an Americans with Disabilities Act (ADA)[2] accommodation so as to prevent smart meter installation at her residence at 1635 4th Street in Bethlehem, Pennsylvania (Residence); (2) whether the Commission erred by holding that the General Assembly mandated smart metering for all Pennsylvanians, with no opt-out; (3) whether the Commission erred by stating that it decides each smart meter alleged harm case on its merits; (4) whether the Commission erred by characterizing Petitioner's requests to avoid smart meter installation as requests to opt out, rather than as accommodation requests; (5) whether the Commission erred by failing to inform Petitioner before her hearing that her physician had to appear in person in order for the Commission to consider his medical opinion; (6) whether the Commission erred by finding PPL's medical expert's *diagnosis* credible, although he had never met or medically examined Petitioner; and (7) whether the Commission erred by ignoring Petitioner's separate, formal complaint related to her property located at 4 North Street in Port Clinton, Pennsylvania (Port Clinton Property), where her daughter resides. After review, this Court affirms.

On January 26, 2018, Petitioner filed the Complaint with the Commission opposing smart meter installation at her Residence. *See* Certified Record (C.R.) at 1a. Petitioner averred therein, *inter alia*, that smart meters cause adverse health effects and fires, and raise privacy and cybersecurity concerns, other states have an *opt out* option for smart meters, and it is unlawful to force smart meter devices on Pennsylvania consumers. Petitioner also alleged that, since smart meter safety is questionable, she denied PPL permission to install a smart meter at her Residence.

---

[2] 42 U.S.C. §§ 12101-12213.

On February 20, 2018, PPL filed its Answer to the Complaint, therein denying Petitioner's allegations that the current law does not allow a customer to opt out of smart meter installation, and that a smart meter would have an adverse impact on Petitioner's health or safety. PPL averred that, in accordance with a 2008 amendment to the Code, known as Act 129 (Act 129),[3] PPL is required to install smart meters for all of its current PPL meter customers. On May 17, 2018, Petitioner filed what the Commission considered to be an amendment to her Complaint (May 17, 2018 Filing), wherein she added that she also objected to the installation of a smart meter at the Port Clinton Property. *See* C.R. at 38a.

On August 17, 2018, the Commission's Administrative Law Judge (ALJ) conducted an evidentiary hearing. Petitioner, pro se, testified, but presented no witnesses. Petitioner also offered numerous exhibits, including purported medical records from her physician, Stanley Yevelson, D.O. PPL offered the testimony of: William Hennegan, Scott Larson, Christopher Davis, Ph.D., and Mark Israel, M.D. (Dr. Israel). On September 24, 2018, Petitioner resubmitted the May 17, 2018 Filing, but **handwrote thereon the Complaint's docket number**. *See* C.R. at 417a. On November 15, 2018, the ALJ issued her initial decision (Initial Decision), wherein she addressed both the Residence and Port Clinton Property, *see* C.R. at 526a, and dismissed the Complaint for failure to prove by a preponderance of evidence that the installation of the smart meter constitutes unsafe or unreasonable service under Section 1501 of the Code.

By December 4, 2018 letter, Petitioner notified the Commission that she was filing exceptions (Exceptions) to the Initial Decision. Therein, she also sought to "clarify a misunderstanding of a separate complaint filed involving a different property[,]" C.R. at 567a, stating:

---

[3] Act of October 15, 2008, P.L. 1592, No. 129, 66 Pa.C.S. §§ 2801-2815.

The second part of this letter is to clarify the misunderstanding of a separate[,] formal complaint filed for [the Port Clinton Property], a property which I own and where my daughter resides. It has erroneously been included with this docket number for our primary [R]esidence in Bethlehem and mistakenly entered as an "amendment[,"] although I filed no such amendment. The formal complaint for the Port Clinton [P]roperty always was to be taken as a separate case, apart from this [C]omplaint, as it is a different property in a different location with a completely different situation. This is the reason I filed and sent the paperwork individually. In fact, in a letter to [the ALJ] dated June 15, 2018, I stated that there was a "separate complaint filed for [the Port Clinton Property."] Also, when I contacted both PPL and Grid One (the company hired to install smart meters on behalf of PPL), both were aware of the [Bethlehem C]omplaint regarding the [Residence] and both *unaware* of any complaints regarding the Port Clinton [Property]. Any mention of this second address during the hearing was only to illustrate my personal experiences with smart meters. Because of this, I am including and filing for the third time a separate[,] formal complaint for [the Port Clinton Property].

C.R. at 568a. In addition, Petitioner enclosed a third complaint form related to the Port Clinton Property. On May 23, 2019, the Commission denied Petitioner's Exceptions, adopted the ALJ's Initial Decision, and dismissed the Complaint. Petitioner appealed to this Court.[4, 5]

The instant matter was stayed pending the Pennsylvania Supreme Court's consideration and disposition of the appeals from this Court's order in *Povacz v. Pennsylvania Public Utility Commission*, 241 A.3d 481 (Pa. Cmwlth.

---

[4] On June 5, 2019, Petitioner's daughter, Treasure Hoffman, filed a complaint with the Commission at Docket No. C-2019-03010414, seeking to prevent the installation of a smart meter at the Port Clinton Property. On August 14, 2019, the ALJ issued a separate decision under Docket No. C-2019-03010414 dismissing that complaint based on the doctrine of *lis pendens* and pursuant to Section 5.101(a)(6) of the Commission's Regulations, 52 Pa. Code § 5.101(a)(6), because the complaint "raise[d] the same issues that have been decided by the Commission at Docket No. C-2018-2644957[.]" Petitioner Br., Ex. H at 1.

[5] On July 8, 2019, PPL filed a notice of intervention with this Court.

4

2020) (*Povacz I*), *aff'd in part*, *rev'd in part*, 280 A.3d 975 (Pa. 2022) (*Povacz II*), wherein this Court held that Act 129 does not mandate the installation of smart meters, and that the Commission had authority to grant customers an accommodation based on their health concerns.[6]  On August 16, 2022, the Pennsylvania Supreme Court issued *Povacz II*.

> The *Povacz II* Court concluded:
>
> Act 129 **does** mandate that [electric distribution companies] [(]EDCs[)] furnish smart meters to all electric customers within an electric distribution service area and **does not** provide electric customers the ability to opt out of having a smart meter installed.  An electric customer with concerns about smart meters **may seek an accommodation** from the [Commission] or [the] EDC, but to obtain one[,] **the customer must establish by a preponderance of the evidence that installation of a smart meter violates Section 1501** [**of the Code**].

*Povacz II*, 280 A.3d at 983-84 (emphasis added; footnote omitted).

> The *Povacz II* Court explained:
>
> To carry [her] burden of proof on a Section 1501 [of the Code] claim, a smart meter challenger may be required to present medical documentation and/or expert testimony demonstrating that the furnishing of a smart meter constitutes unsafe or unreasonable service in violation of Section 1501 [of the Code] under the circumstances presented.

*Id*. at 1000.

> The *Povacz II* Court expounded:
>
> Specific to smart meters and [Radio Frequency] [(]RF[)] emissions, the burden is two-fold.  First, **a customer must present expert opinion** rendered to a reasonable degree of scientific certainty **that smart meters emit RFs and that RF emissions cause adverse health effects and**, second, [**an**] **expert opinion** rendered to a reasonable

_____

[6] Multiple appeals were taken from this Court's Order.

5

degree of medical certainty **that RF emissions from the smart meters**, either alone or cumulative to other sources of RF emissions, **caused them harm**. . . . Once the customer produces such evidence, the utility may then defend by providing scientific and/or medical expert testimony that, within a reasonable degree of certainty, the RF emissions from smart meters did not cause the alleged harm. The fact[-]finder must then weigh the evidence and decide whether it is more likely than not that the smart meter causes harm to the customer.

*Id*. at 1006 (emphasis added; citation omitted).

On October 6, 2022, this Court lifted the stay and directed the parties to file supplemental briefs addressing the *Povacz II* decision's impact on the instant appeal. The Commission and PPL submitted supplemental briefs. Because Petitioner did not timely file a supplemental brief, by February 23, 2023 Order, this Court precluded Petitioner from filing one.

Initially, Pennsylvania Rule of Appellate Procedure (Rule) 2116(a) states, in relevant part, that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Here, Petitioner listed seven issues in her Statement of Questions. *See* Petitioner Br. at 7; *see also supra* at 1-2. However, in other portions of her brief, Petitioner raised issues that were not included in the Statement of Questions "or fairly suggested thereby." Pa.R.A.P. 2116(a). Accordingly, this Court shall restrict its review to those issues Petitioner included in her Statement of Questions.

Preliminarily, the Commission asserts that Petitioner attempts to raise several issues on appeal that she did not raise before the Commission, and thus, Petitioner waived those issues. Specifically, the Commission contends:

[Petitioner] attempts to raise several claims that were neither raised during her evidentiary hearing on August 17, 2018, nor included in her Main Brief to the Commission filed on September 24, 2018. These claims include, *inter alia*:

6

1. That forced [smart meter] deployment on [Petitioner's] property violates the due process, equal protection, and clean air protections in [a]rticle [I] of the Pennsylvania State Constitution.[7]

2. That the Commission's determination violates the [ADA] . . . by refusing to provide an accommodation.

3. That the Commission's decision is contrary to [f]ederal law and violates [Petitioner's] substantive due process and equal protection rights under the Fourteenth Amendment of the United States (U.S.) Constitution [(Fourteenth Amendment)].[8]

Commission Br. at 56-57 (citations omitted).

With respect to appellate petitions for review, Rule 1551(a) specifies, in pertinent part:

**Only questions raised before the government unit shall be heard or considered**, except:

(1) Questions involving the validity of a statute.

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions that the court is satisfied the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be raised, it shall remand the record to the government unit for further consideration of the additional question.

Pa.R.A.P. 1551(a) (emphasis added).

The record reflects that Petitioner did not raise the aforementioned issues before the Commission, and Petitioner does not claim otherwise in her Reply

---

[7] *See* PA. CONST. art. I., § 27.
[8] U.S. CONST. amend. XIV, § 1.

7

Brief to this Court. Thus, Petitioner has waived those issues,[9] and this Court shall not address them herein.[10] *See* Pa.R.A.P. 1551; *see also Met-Ed Indus. Users Grp. v. Pa. Pub. Util. Comm'n*, 960 A.2d 189 (Pa. Cmwlth. 2008) (where, under Rule 1551(a), customers waived a federal preemption issue not previously raised before the Commission). Accordingly, Petitioner waived her first issue - whether the Commission erred by holding that Petitioner was not entitled to an ADA accommodation.

Petitioner's second issue - that the Commission erred by holding that Act 129 mandated smart metering for all Pennsylvanians, with no opt out - lacks merit in light of the *Povacz II* Court's declaration that "Act 129 . . . does not provide electric customers the ability to opt out of having a smart meter installed." *Povacz II*, 280 A.3d at 983.

With respect to Petitioner's third issue - whether the Commission erred by stating that it decides each smart meter harm case on its merits, while dismissing every single case - the Commission's Opinion and Order reflects that the Commission decided this matter on its merits and its decision is consistent with the

---

[9] To the extent that Petitioner's discussion pertaining to perceived constitutional due process, equal protection, and clean air violations implicates Act 129's validity, *see* Pa.R.A.P. 1551(a)(1), this Court in *Povacz I* declined to recognize the petitioners' claim regarding a violation of their Fourteenth Amendment liberty interests in bodily integrity. This Court notes that "[c]onstitutional protections apply against state actors. [PPL] is not a state actor in relation to its installation of smart meters and provision of electricity to its customers." *Povacz I*, 241 A.3d at 486 n.9. Further, and more importantly, Petitioner did not raise these issues in her Statement of Questions and, thus, this Court shall not address them.

[10] Petitioner claims in her brief that she should be given latitude as a pro se litigant. Notwithstanding, the ALJ warned Petitioner that, although she would be asking questions throughout the hearing, the ALJ was not Petitioner's attorney. Petitioner acknowledged that she understood the ALJ's warning. "While this Court is sympathetic to the difficulty facing all *pro se* parties, it is axiomatic that a party seeking to represent [her]self assumes the risk that h[er] lack of legal knowledge might prove to be h[er] undoing." *Commonwealth v. Geatti*, 35 A.3d 798, 800 (Pa. Cmwlth. 2011).

law as declared in *Povacz II*. Simply put, Petitioner cannot opt out of smart meter installation, and Petitioner failed to satisfy her burden to obtain an accommodation.

Next, in addressing Petitioner's fourth issue - whether the Commission characterized Petitioner's request as a request to opt out rather than a request for an accommodation - the Commission properly considered Petitioner's request that a smart meter not be installed at her Residence, but concluded that there was no legal or record basis to forego such installation, and that Petitioner had not met her burden to obtain an accommodation.

Regarding Petitioner's fifth issue - whether the Commission erred by not informing her before the hearing that her physician had to appear in person for the Commission to consider his medical opinion - the Commission notified Petitioner that she was required to present evidence to support her case. On April 4, 2018, the Commission's prehearing order, which Petitioner received, notified her: "YOU WILL LOSE THIS CASE IF YOU DO NOT TAKE PART IN THIS HEARING AND PRESENT EVIDENCE ON THE ISSUES RAISED[,]" and provided instructions for subpoenaing witnesses. C.R. at 21a. Further, to the extent that Petitioner's failure to offer her physician's live testimony impacted her case, the Commission had no duty to instruct Petitioner how to prepare and present her case. A pro se litigant bears the risk of his or her lack of legal knowledge. *See Commonwealth v. Geatti*, 35 A.3d 798 (Pa. Cmwlth. 2011); *see also Green v. Harmony House N. 15th St. Hous. Ass'n, Inc.*, 684 A.2d 1112 (Pa. Cmwlth. 1996).

In her sixth issue, Petitioner contends that the Commission erred by crediting PPL's physician's testimony over her physician's medical records where PPL's physician never examined Petitioner. The law is well established that "matters of credibility and evidentiary weight are for the Commission[.]" *NRG Energy, Inc. v. Pa. Pub. Util. Comm'n*, 233 A.3d 936, 957 (Pa. Cmwlth. 2020). "Failure to conduct a physical examination does not go to a medical witness'

9

competency; rather, it goes to his credibility." *Tatano v. Workers' Comp. Appeal Bd. (Copyworld of Pittsburgh)*, 698 A.2d 123, 127 (Pa. Cmwlth. 1997). Here, the Commission's Opinion and Order reflects that it carefully reviewed and properly weighed the evidence, including Dr. Israel's testimony. "[T]his Court may not substitute its view of the evidence for that of the Commission." *NRG Energy*, 233 A.3d at 957. Thus, Petitioner's sixth argument fails.

Finally, relative to her seventh issue, Petitioner contends that the Commission erred by addressing her objection to smart meter installation at her Port Clinton Property, for which Petitioner claims she filed a separate, formal complaint. Specifically, Petitioner asserts:

> [Petitioner's] repeated requests for a separate hearing for the Port Clinton [Property] were never addressed. [The ALJ] contradicted herself by including the two addresses in the same Docket [N]umber (C-2018-2644957) in the Initial Decision dated November 15, 2018, "[Petitioner] requests a smart meter not be installed: 1) [at the Residence]; and 2) [at the Port Clinton Property]" . . . . ; and, in her Opinion and Order of May 23, 2019, "On May 17, 2018, [Petitioner] filed an amendment to her Complaint adding that, in addition to objecting to a smart meter being installed at her service address at [the Residence] . . . , she also objected to the installation of a smart meter at [the Port Clinton Property]; and, later in the same Opinion and Order, stating "In its Replies to the [Petitioner's] third Exception, PPL states that, to its knowledge, there is no separate formal complaint on file with the Commission for the [Port Clinton Property]. Notwithstanding, PPL agrees that the Port Clinton [Property] will not be subject to the disposition of this proceeding."
>
> . . . .
>
> Either [the] Port Clinton [Property] truly **was included in** [**Petitioner's Complaint**], Docket [N]umber C-2018-2644957, **as** [**Petitioner**] **was told on two separate occasions** by [the Commission's] Secretary Rosemary Chiavetta, and as [the] ALJ [] decided in her Initial

> Decision, in which case PPL should have recognized the fact and abstained from installment of a[] . . . smart meter (as it did at the [Residence]) at that address, as was requested by [Petitioner] in an email to [attorney] Devin Ryan on May 27, 2019: "I politely request that installation of smart meters at [the Residence and the Port Clinton Property], b[e] delayed until the resolutions of the petition and appeal, as is within my rights according to [the Code]," and as is customary pending the outcome of a dispute; or a separate formal complaint for the Port Clinton [Property] should have been recognized by the [Commission]. No recognition of a separate complaint was ever received, nor was [Petitioner] ever informed that the Port Clinton [Property] would be granted a separate hearing. If the [Commission] had properly given attention to this matter, [a smart] meter would not and should not have been deployed on the Port Clinton [Property] by PPL, and the expensive modification of moving the meter would not have been required.

Petitioner Br. at 21-23 (citations omitted).

Section 5.81(a) of the Commission's Regulations provides that "[t]he Commission or presiding officer, **with or without motion**, **may order proceedings involving a common question of law or fact to be consolidated**. The Commission or presiding officer may make orders concerning the conduct of the proceeding as **may avoid unnecessary costs or delay**." 52 Pa. Code § 5.81(a) (emphasis added). The issues pertaining to the Residence and the Port Clinton Property were identical - Petitioner objected to smart meter installations on the same bases, just in two different locations and, regardless of the location, the result is the same, especially since she did not assert that she would have presented additional evidence. *See Povacz II*. Thus, the Commission acted within its authority when it consolidated the matters. Further, Petitioner submitted her objection to smart meter installation at the Port Clinton Property on several occasions and, in one instance, wrote the

11

Complaint's docket number on the filing.[11] Accordingly, Petitioner cannot claim ignorance of the consolidation of her two actions.

      For all of the above reasons, the Commission's Opinion and Order is affirmed.

                             _____

                             ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[11] Petitioner admits that a Commission representative twice told her that the Port Clinton Property had been included in the Complaint. *See* Petitioner Reply Br. at 22.

12

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

Evangeline Hoffman-Lorah,  :
     Petitioner  :
         :
   v.      :
         :
Pennsylvania Public Utility  :
Commission,     :  No. 712 C.D. 2019
     Respondent  :

<u>O R D E R</u>

  AND NOW, this 23rd day of June, 2023, the Pennsylvania Public Utility Commission's May 23, 2019 order is affirmed.

_____
ANNE E. COVEY, Judge